**Alpstetten Association, Inc. v. John F. Kelly**

[408 A.2d 644]

No. 165-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed October 15, 1979

*Kristensen, Cummings, Rosi & Murtha, P.C.,* Brattleboro, for Plaintiff.

*Timothy J. O'Connor, Jr.,* Brattleboro, for Defendant.

*John F. Kelly,* Cohoes, New York, *pro se.*

Hill, J. Alpstetten Association, Inc. (Alpstetten) owns the water system supplying houses owned by the appellant Kelly in Alpstetten Village, a vacation home complex in the area of West Dover. In 1974, Alpstetten sued the appellant for water assessments allegedly due and owing for the years 1971–1972 through 1973–1974; demanding a sum certain based on those assessments. Alpstetten was subsequently permitted to amend its complaint to make an adjustment to the claimed indebtedness, for the year 1971–1972, and to include allegations of indebtedness for water assessments covering the years 1974–1975 through 1976–1977.

The appellant has never argued that he was entitled to use the water system free of charge. His position has consistently been that Alpstetten overcharged for the water services he received, and that Alpstetten was required to show, and failed to show, that its assessments were based only upon the cost of those services for which he was required to contribute. The appellant thus denied his indebtedness in the amount alleged. He also interposed two counterclaims, first alleging that Alpstetten had wrongfully interrupted completely the water supply to his properties on or about December 22, 1970, and second alleging a wrongful ongoing interference with the water to his properties through the installation or operation of unspecified flow restricting devices.

In its answer to the appellant's counterclaims, Alpstetten pleaded general denials, and, as to the first, claimed that the appellant was estopped by V.R.C.P. 13(a) because it involved the same transaction or occurrence that formed the basis of previous litigation between the parties.[1] By subsequent amendments to its answer to appellant's first counterclaim, Alpstetten pleaded the doctrines of collateral estoppel and merger, both by reason of the former suit, and the statute of limitations.

█ Alpstetten subsequently moved for summary judgment in its favor both as to its claim and as to the appellant's two counterclaims, alleging as to each that there was no issue as to any material fact and that it was entitled to judgment as a matter of law. Following hearing, the court issued an order dismissing the appellant's counterclaims and granting Alpstetten summary judgment on all but one aspect of its claim, reserving for trial the question of the proper formula to be used in computing the water assessments. The order was unaccompanied by findings of fact or conclusions of law. Relief was granted, so far as anything on the face of the order reveals, on the ground that there were "no genuine issues as to any material fact, except as to the formula to be used in computing the subject assessments . . . ." The order provides no clue as to why the court thought Alpstetten was entitled to judgment on the appellant's counterclaims as a matter of law, which entitlement a party must establish in order to be awarded summary judgment under the plain terms of V.R.C.P. 56(c).

█ A hearing to determine the appropriate formula was held, and findings, conclusions and an order followed. The final judgment order awarded Alpstetten the full sum demanded in its amended complaint, and again dismissed the appellant's counterclaims. While the findings and conclusions supply an adequate basis for our review of the trial court's

---

[1] Alpstetten seemed to subsequently drop its argument that appellant had failed to raise a compulsory counterclaim, perhaps realizing that appellant here had been the plaintiff in the earlier action. Whether appellant's present counterclaim had merged into the judgment on the earlier action and is therefore barred here will be discussed below.

determination concerning the amount of the appellant's indebtedness to Alpstetten, they in no way enlighten us regarding the court's dismissal of the appellant's counterclaims. We conclude that it was error to dispose of the counterclaims on summary judgment.

I.

The appellant's first counterclaim alleged a total disruption of the water supply to his houses in December of 1970, carried out by Alpstetten with intent to inconvenience him and without legal right, resulting in damage to the appellant in that he was "inconvenienced, harassed, embarrassed, and his reputation . . . impaired." Accepting for the moment the trial court's determination that none of the material facts of this incident are in dispute, Alpstetten has not shown itself entitled to judgment as a matter of law.

Alpstetten's complaint was filed in November of 1974. The appellant's first counterclaim was timely if it could have been brought as an independent action at that time. 12 V.S.A. § 463. The cause of action set forth by appellant in the counterclaim accrued some three years and eleven months before the present action was brought. The appellant contends that the general six year statute of limitations for civil cases, 12 V.S.A. § 511, should apply. Alpstetten urges that the three year limitation of 12 V.S.A. § 512 governs, arguing that the appellant's first counterclaim alleges "injury to the person suffered by the act or default of another" within the meaning of 12 V.S.A. § 512(4).

■ We cannot agree with Alpstetten that the first counterclaim involves "injury to the person" within the above quoted subsection. Although we have held that "the nature of the injury sustained, rather than the legal theory underlying the claim for relief, determines which statute is applicable," *Kinney* v. *Goodyear Tire & Rubber Co.*, 134 Vt. 571, 574, 367 A.2d 677, 679 (1976), the phrase "injury to the person" has consistently been applied in its legal sense to cover situations involving bodily hurt, and not to cover all actions that allege harm that is somehow personal to the plaintiff. See *id.* at 576, 367 A.2d at 680; *Murray* v. *Allen*, 103 Vt. 373, 375, 154 A. 678, 679 (1931). The appellant al-

leged a tortious act resulting in an interference with the use and enjoyment of his property. Accordingly, the six year statute of limitations is applicable.

Alpstetten also sought dismissal of the first counterclaim on the grounds of merger and collateral estoppel based upon a final judgment rendered in prior litigation between the parties. *Kelly* v. *Alpstetten Association, Inc.*, 131 Vt. 165, 303 A.2d 136 (1973). Therein, Kelly (appellant herein) brought an action to have his rights and liabilities with respect to the water system declared, and for an injunction to prevent Alpstetten from shutting off water to his premises which it was evidently threatening to do as a way of compelling Kelly to pay disputed water assessments.

■■ The doctrine of res judicata seeks to prevent the relitigation of a cause of action finally adjudicated between the parties in an earlier suit; collateral estoppel, on the other hand, seeks to prevent the relitigation of issues that were actually litigated and necessary to the resolution of the original litigation. Both principles are aimed at eliminating repetitive or piecemeal litigation. See generally 1B Moore's Federal Practice ¶ 0.405, at 621–634 (2d ed. 1974).

■ We fail to see how the appellant's counterclaim for damages can be barred merely because he once sought to enjoin the conduct that allegedly gave rise to his injury. For anything that appears in the record, the actual conduct now alleged was never put in issue in the prior litigation, only the legal right of Alpstetten to engage in that conduct. Nor has Alpstetten established on this record that the appellant had any cause of action for damages at the time he brought his action for an injunction and declaratory relief. Alpstetten was not entitled to judgment as a matter of law on the first counterclaim, and the summary judgment with respect to it must be reversed.

## II.

The appellant's second counterclaim charges Alpstetten with an ongoing interference with the water pressure to his properties through the installation or operation of unspecified devices, resulting in aggravation, harassment, damage to the appellant's reputation, and in the necessity of drilling a well

to obtain an alternate water supply. The lack of findings and conclusions and the brevity of the summary judgment order make it difficult for us to know with absolute certainty whether the trial court granted summary judgment because the appellant failed to come forward with enough support for his allegations to go to trial, or because all of his allegations, even if proven, would not amount to a cause of action. See *Sykas* v. *Kearns*, 135 Vt. 610, 612–13, 383 A.2d 621, 623 (1978) (findings under V.R.C.P. 56 are not necessary but are helpful to appellate review). The pleadings, affidavits, interrogatories, and requests for admissions before the trial court on the motion for summary judgment, along with the transcript of the summary judgment hearing, disclose that no issue was raised as to any privilege on the part of Alpstetten to restrict the water flow to the appellant's premises. As far as the record shows, the sole question on the motion was whether the appellant had raised a substantial issue as to the material facts alleged in his pleadings, and we will treat the matter as if summary judgment had been granted on that ground.

█    Once a claim is challenged by motion for summary judgment, accompanied by an affidavit or affidavits or other documentary evidence sufficient to call into question the existence of the factual basis for the claim, the person advancing the claim may not rest upon his mere allegations, but must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue. *Wisell* v. *Jorgensen*, 136 Vt. 604, 398 A.2d 283 (1979). If he does not come forward, the trial court is warranted in concluding that there is no dispute as to the fact or facts thus challenged, and, if there is no substantial dispute as to any other material fact, may proceed to determine whether a party is entitled to judgment as a matter of law. This is not to say, however, that a party seeking summary judgment can put his opponent to the choice of filing an opposing affidavit or having his allegations taken as indisputably untrue for purposes of determining the motion simply by the filing of *a* paper with the court. See generally 10 C. Wright & A. Miller, Federal Practice and Procedure § 2739 (1973). The accepted judicial construction of Fed. R. Civ. P. 56(e), which was adopted verbatim in V.R.C.P. 56(e), makes it apparent that

the moving party must meet its initial burden of showing an absence of controverted material fact before the opposing party is "required to come forward with suitable opposing affidavits." *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). This position is further buttressed by the Advisory Committee Notes to Fed. R. Civ. P. 56(e), which provide:

> Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even if no opposing evidentiary matter is presented.*

31 F.R.D. 621, 648 (1962) (emphasis added).

Accordingly, in order to raise a duty to reply to an affidavit that challenges the existence of a factual basis for the material allegations advanced in stating a cause of action, the affiant must satisfy the court that he is in a position to know whether the facts do or do not exist. If he is not in this position, because his statements are on information or belief only, or because he denies knowledge of facts where it is not shown that he would certainly have knowledge of them if they existed, his affidavit does not overcome the allegations contained in the complaint, cross-claim, or other claims. A dispute as to the factual issue or issues remains. See *Johnson* v. *Fisher*, 131 Vt. 382, 306 A.2d 696 (1973).

▮▮ This is so in the present case. In its memorandum in support of summary judgment, Alpstetten made much of the fact that it had no knowledge of any interference with the appellant's water supply. This was based on Alpstetten's denials in response to interrogatories propounded by the appellant inquiring into Alpstetten's knowledge of such interference. However, Alpstetten's answers were signed by only one of the officers of the corporation. Even if the one officer purported to speak for all agents of the corporation, his representations as to their knowledge would be hearsay, which cannot supply the basis of a summary judgment affidavit. Such an affidavit must be made on personal knowledge and must set forth facts that would be admissible in evidence. See, e.g., *Information Acquisition Corp.* v. *Department of Justice*, 444 F. Supp. 458, 461 n.1 (D.D.C. 1978) (corporate president's affidavit in support of summary judgment struck

because not based on personal knowledge and did not set forth admissible facts). Only a motion for summary judgment so supported will force an opposing party to go beyond his allegations and suffer an adverse judgment on the merits without having gone to trial. V.R.C.P. 56(e).

Although the appellant was not specific as to how he thought Alpstetten was interfering with his water supply, it was a part of his claim that such interference was being carried out secretly. The appellant brought a number of specific allegations before the court. He claimed that his water pressure was adequate before a certain point in time, and frequently inadequate thereafter; he alleged that an agent of Alpstetten had once said that he, the appellant, had the best water pressure in the village, being at a low elevation in a gravity-fed system; and he alleged that he had heard an odd noise in his pipes, like a partially shut valve in the line. Such allegations raise substantial questions of fact within the meaning of V.R.C.P. 56. Alpstetten could not, by having one of its officers deny any knowledge of wrongdoing, on its behalf, force the appellant to try his case through discovery. See *Sykas* v. *Kearns, supra,* 135 Vt. at 612, 383 A.2d at 623 ("moving party has the burden of establishing that there exist no disputed issues both in this Court and before the trial court"). Appellant was entitled to go to trial.

## III.

We turn now to the determination, following hearing, of the amount of the appellant's indebtedness to Alpstetten for water assessments, and conclude that the trial court was in error. That court found as a fact in connection with this issue that the appellant was assessed a proportional share of that part of Alpstetten's annual budget allocated to the operation of the water system at each of several annual stockholders' meetings. It concluded that the formula used by Alpstetten was "fair, reasonable, and equitable," and that the appellant was indebted to Alpstetten for the years in issue in the amounts assessed. It further found that, although the appellant had neglected to pay the annual assessments, "he [did] not offer a reasonable and equitable alternative formula for determining such water charges."

The problem with this analysis is that Alpstetten was not at liberty to attempt to do equity in fixing its water assessments. It was bound to charge homeowners in accordance with specific instructions contained in the various grants to them. *Kelly* v. *Alpstetten Association, Inc., supra,* 131 Vt. at 169, 303 A.2d at 139. The grants provide that the grantees contribute only toward the cost of maintaining the water main, spring, and associated facilities. Everything from the connections at the water main to the dwellings, or, as it was put at oral argument, everything from the curb in, is the responsibility of the individual grantees. Nonetheless, there was evidence at trial that Alpstetten did not observe this distinction provided for explicitly in the grants, but performed services within the curb, and then charged the costs to all grantees proportionally. No breakdown of the costs associated with services within the curb and outside the curb was offered.

As Alpstetten could charge its grantees for water service only in conformity with the terms of the individual grants, the burden was on it to show that its yearly assessments were properly made. What is fair and reasonable might control in the absence of agreement, *id.* at 168, 303 A.2d at 138, but cannot control the terms of an agreement by which Alpstetten was bound. This portion of the case must be remanded for a determination of the charges Alpstetten was entitled to levy against the appellant under the terms of the grants.

*Reversed and remanded.*