INFORMATION ACQUISITION CORP., Plaintiff,

v.

DEPARTMENT OF JUSTICE et al., Defendants.

Civ. A. No. 77–0883.

United States District Court, District of Columbia.

Jan. 16, 1978.

David M. Basker, Washington, D. C., for plaintiff.

Robert N. Ford and Dennis A. Dutterer, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, District Judge.

This action involves a request for information under the Freedom of Information Act (FOIA) wherein plaintiff—the Information Acquisition Corp.—seeks to obtain "all records" maintained by the Department of Justice "that in any manner whatsoever relate to the federal employment of Eugene M. Propper." Mr. Propper is an Assistant United States Attorney employed by the Department of Justice in Washington, D.C. The case is presently before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment.

## I.

Plaintiff's request for release of information regarding Mr. Propper was received by

the Department of Justice on May 10, 1977. Defendants concede that they did not respond to the request until May 31, 1977. Meanwhile, on May 24, plaintiff had filed this action seeking to compel release of the requested information. Contemporaneously with its complaint, plaintiff filed a motion to require detailed justification, itemization and indexing of the requested records under the authority of the D. C. Circuit's decision in *Vaughn v. Rosen,* 157 U.S.App. D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). In an order dated September 29, 1977, this Court granted plaintiff's *Vaughn* motion, directing defendant to file "an itemization and index of the records which are the subject of this action and a detailed justification of all claims of exemption."

Shortly thereafter, the government filed the instant motions, accompanied by the following documents: 1) a two-page affidavit from an official in the information appeals office of the Department of Justice; 2) a copy of the Department's letter of May 31 denying plaintiff's FOIA request; 3) a list of sixty-four documents, consisting of a brief identification and the statutory claim of exemption for each document; 4) a one-page sheet summarizing the various positions, duty stations, grades and salaries which Mr. Propper has held at the Department; and 5) blank copies of various Civil Service Commission standard employment forms. Thirty of the sixty-four identified documents—which in the aggregate apparently make up Mr. Propper's official personnel file—are simply completed versions of those standard forms which Mr. Propper has encountered during his tenure at the Department.

■ Plaintiff has indicated that the purpose of its FOIA request is generally to investigate the qualifications and competency of Mr. Propper, particularly as they relate to an investigation which Mr. Propper is currently conducting.[1]

Defendant's arguments can be summarized briefly. The government first claims that Information Acquisition Corp. has failed to exhaust its administrative remedies because it filed this lawsuit without taking an administrative appeal from the adverse determination in the May 31 letter. Second, the Department argues that it is entitled to summary judgment because, as a matter of law, the first sixty-three documents fall within the b(6), 5 U.S.C. § 552(b)(6) (1970), exemption to the FOIA and the sixty-fourth falls within the b(7)(A) exemption, 5 U.S.C. § 552(b)(7)(A) (Supp. V 1975). In large part, plaintiff responds to these later contentions with the assertion that defendant has failed to comply with the requirement of detailed itemization and explanation of claims of exemption required under *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1974), and *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242 No. 75–0927 (D.C.Cir., 1977), as well as this Court's order of September 29.

---

1. Plaintiff's Opposition to Defendants' Motion to Dismiss, or In the Alternative, For Summary Judgment, at 12.

Plaintiff has also submitted an affidavit, by its president, which contains additional assertions of fact about the investigation, as well as a number of totally unsubstantiated allegations against Mr. Propper. The government has moved to strike the affidavit on the grounds that it does not comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. The Court agrees, and there being no timely opposition to the motion, the Court will treat it as conceded and order the affidavit stricken from the record. *See* Local Rule 1–9(d). Plaintiff's president may, of course, submit another affidavit in response to a renewed motion for summary judgment, or in support of plaintiff's own summary judgment motion. Such an affidavit, if made on personal knowledge and setting forth facts which would be admissible in evidence, would serve to identify plaintiff's asserted public interest purpose in seeking the disputed documents. The present affidavit, however, serves no such purpose, is not made on personal knowledge, does not set forth facts as would be admissible, and does not show that the affiant is competent to testify to the matters stated. *See* Fed.R.Civ.P. 56(e).

In any case, the "facts" stated in the present affidavit were largely irrelevant to the issues before the Court. The absence of an affidavit in opposition to the instant motion does not affect the Court's conclusion that the government has not as yet carried its burden as to all the disputed documents. *See* Part III, *infra.*

## II.

Turning first to defendant's claim that the plaintiff has failed to exhaust its administrative remedies, the Court is unable to discern how this contention can have any merit in light of 5 U.S.C. § 552(a)(6)(C) (Supp. V 1975). That subsection states: "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." The applicable time limit provision provides that the agency shall determine whether to comply with a request within ten days of receipt of the request and "shall immediately notify the person making such request of such determination and the reasons therefore." 5 U.S.C. § 552(a)(6)(A)(i) (Supp. V 1975).

■ The plaintiff's request was received on May 10, 1977. By the government's admission, it did not respond to the request until May 31, well after 10 days, excluding Saturdays and Sundays, had passed. The Department does not contend that it issued a written notice for a ten-day extension, as allowed by 5 U.S.C. § 552(a)(6)(B) (Supp. V 1975), or that there existed the particularized "unusual circumstances" required for such an extension. In fact, the government's motion does not address the section 552(a)(6) issue in any manner whatsoever. It merely asserts, in a one paragraph argument, that plaintiff did not appeal the determination announced in the May 31 letter. The Court finds that plaintiff must be deemed to have exhausted its administrative remedies.

## III.

■ The *Vaughn* and *Mead Data* cases establish a ˙fundamental principal for the resolution of FOIA actions in a district court: the agency cannot sustain its burden of demonstrating that records were properly withheld where there is a genuine *factual* dispute as to the nature of the underlying documents. *See Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242

No. 75–0927 (D.C.Cir., 1977); *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973). As noted by the Court of Appeals in *Mead Data* : "Where there is . . . a factual dispute over the nature of the information sought in a FOIA suit, the lack of access of the party seeking disclosure undercuts the traditional adversarial theory of judicial dispute resolution." 566 F.2d at 250. To remedy this situation, *Vaughn* required the agency to provide a "detailed justification" of its claims of exemption, together with specific itemization and indexing of the contents of the withheld records.

*Mead Data* further emphasized the need for the agency to address itself to the question of segregability of requested documents, particularly since the FOIA now explicitly requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (Supp. V 1975). The *Mead Data* court therefore required "that when an agency seeks to withhold information it must provide a relatively detained justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." 566 F.2d at 251.

■ The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend upon the nature of the document at issue and the particular exemption asserted. This is because the *Vaughn* and *Mead Data* requirements are not ends in themselves, but only means by which the FOIA plaintiff gains the ability "to present its case effectively." *See Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d at 251.

In the instant case, Document 1, for example, has been identified by the Department of Justice as follows: "Standard Form 171 entitled 'Personal Qualifications Statement.' Four-page document, dated December 18, 1970, consisting of biographi-

cal information." The nature of standard Civil Service Commission forms is well known to the public. Blank copies are easily obtained, and in any case, defendants have provided plaintiff with blank copies of all forms found in Mr. Propper's file. Plaintiff therefore needs no additional *facts* regarding Document 1 in order to respond to defendants' assertions of exemption. No possibly segregable portion of the document remains shrouded in mystery. Plaintiff knows that this document contains a statement of Mr. Propper's major field of study in college, the name and location of his high school, and many other pieces of information common to employment application forms. Most of the documents identified by defendant as relevant to plaintiff's request—even those which are not completed standard forms—are similarly not mysterious.

▉ As to most of the disputed documents, therefore, there would be no purpose served in requiring the agency to provide the plaintiff with additional itemization and indexing, *i. e.*, the purely factual component of the *Vaughn* showing. Of the sixty-four documents identified by the agency as relevant to plaintiff's original request, the Court has determined that only six have arguably been described in such a way that the *Vaughn* objectives may not be adequately fulfilled. The agency will therefore be ordered to present additional factual information regarding documents identified in the record as 15, 16, 31, 61, 62, and 64. The agency will also be directed to heed the segregability requirements of *Mead Data*, particularly as they relate to the only lengthy document involved—number 64.

▉ Equally important, of course, is the requirement of adequate and detailed "justification" or explanation of agency claims of exemption and correlation of those claims with particular portions of documents. This legal or mixed fact-law component of the *Vaughn* requirement is necessary in order to give greater content to the itemization and indexing requirement and to insure that the burden of sustaining

claimed exemptions remains on the agency. *See Mead Data Central v. Department of the Air Force*, 566 F.2d at 250. An adequate agency explanation is particularly appropriate where, as here, the Court is confronted with a government motion for summary judgment.

The first sixty-three documents at issue are claimed to fall under the b(6) exemption as "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1970). The sixty-fourth is claimed to be covered by exemption b(7)(C) as "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such record would . . . constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C) (Supp. V 1975).

▉ Unfortunately, the government's justification for the withholding of these documents is somewhat less than detailed. As to the first sixty-three, the agency brief states: "There can be no dispute that the documents in the personnel file of an Assistant United States Attorney or any federal employee if released to the public would be an invasion of personal privacy of that individual . . . ." If the law were that the release of any personnel file or any part thereof necessarily constituted an unwarranted invasion of personal privacy, this explanation would be entirely adequate. At least since the Supreme Court's decision in *Department of the Air Force v. Rose*, however, that is simply not the law, and in fact, has never been the law in this circuit. *See, e. g., Getman v. NLRB*, 146 U.S.App. D.C. 209, 450 F.2d 670 (1971). As explained by the Supreme Court: "[W]e find nothing in the wording of Exemption 6 or its legislative history to support the Agency's claim that Congress created a blanket exemption for personnel files. Judicial interpretation has uniformly reflected the view that no reason would exist for nondisclosure in the absence of a showing of a clearly unwarranted invasion of privacy . . . ." *Department of the Air Force v. Rose*, 425 U.S.

352, 371, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976).

■ It may be that many or most of the sixty-three documents contain exactly the type of "core" personal information, e. g., marital status or college grades, the release of which will *normally* constitute a clearly unwarranted invasion of privacy. But two considerations militate against the government's claim of blanket exemption even in the case of core personnel records. First, it is difficult to understand how the release of some of these documents would in any way infringe on Mr. Propper's privacy. For example, Document 12 is a one-page record reflecting excepted appointment status, and Document 47 is a similar record showing a salary increase. Similar information has already been released to plaintiff and is generally a matter of public record under 5 C.F.R. § 294.702 (1977). Second, the b(6) exemption incorporates a balancing test under which even rather substantial invasions of privacy may theoretically be outweighed by a showing of strong public interest in disclosure. *See generally Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

■ With regard to the sixty-fourth document, the government has as yet offered no explanation of how the document fits into the category of an investigatory record which was *compiled for law enforcement purposes*. The agency offers only its conclusory explanation that the record is clearly investigatory and that its release would constitute an unwarranted invasion of personal privacy. This is also a document regarding which the plaintiff, and the Court, have an inadequate factual basis on which to make a reasoned evaluation of the claimed exemption.

■ Because the requirements of *Vaughn* and *Mead Data* have not been fulfilled, and because the agency has failed to carry its burden of sustaining claimed exemptions as to many of the disputed documents, the instant motions must be denied.

IV.

■ In order to expedite the ultimate resolution of this litigation, the Court should note that the plaintiff has not responded to the agency's index of documents in a particularized way. Most important, plaintiff has not explained how its asserted purpose in obtaining these records has anything to do with many of the listed documents. For example, Document 20 is Standard Form 176, a two-page record concerning life insurance coverage. There is clearly a substantial privacy interest associated with this document and it is difficult to see how any public interest would be served by its release. Rather than granting defendant partial summary judgment as to this and a number of other documents in which there would appear to be no conceivable public interest, the Court invites plaintiff to either withdraw its request as to such documents or to submit additional affidavits explaining its purpose in continuing to seek release of the information.

■ Finally, the plaintiff has made some rather ambiguous suggestions in its papers that the government's response has been inadequate because all relevant documents are not included on the current list of sixty-four. If that is the case, plaintiff has open to it adequate procedures under the discovery rules to determine whether any other agency records are properly encompassed within the scope of its original administrative request and the instant complaint.

An appropriate order will issue of even date herewith.